*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

In re J. M. REID, Minor.

UNPUBLISHED
March 2, 2023

No. 362216
St. Clair Circuit Court
Family Division
LC No. 21-000136-NA

Before: K. F. KELLY, P.J., and MURRAY and SWARTZLE, JJ.

PER CURIAM.

Respondent-mother, J. Reid, appeals as of right the trial court's order terminating her parental rights to the minor child pursuant to MCL 712A.19b(3)(c)(*i*), (g), and (j). For the reasons set for in this opinion, we affirm the trial court's order.

## I. STATUTORY GROUNDS

In order to terminate parental rights, the trial court must find that at least one statutory ground for termination has been established by clear and convincing evidence. *In re Trejo*, 462 Mich 341, 355; 612 NW2d 407 (2000). This Court reviews the trial court's findings under the clearly erroneous standard. MCR 3.977(K). A finding is clearly erroneous if the reviewing Court is left with a definite and firm conviction that a mistake has been committed. *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989) (quotation marks and citations omitted).

The trial court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination of parental rights under the following circumstances.

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

-1-

(g) The parent, although, in the court's discretion, financially able to do so, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

After reviewing the record, we conclude that the trial court did not clearly err when it terminated respondent's parental rights under these grounds.

The evidence established that Children's Protective Services ("CPS") began investigating respondent's family in May of 2021, after it received complaints of improper supervision, substance abuse, and physical neglect. It was reported that the child was not properly fed, she drank water out of a toilet in respondent's home, and she missed a substantial amount of school. The maternal grandfather reported that respondent left the child in his care for weeks at a time. In July 2021, CPS found respondent's home unsuitable for a child. Investigators observed respondent display explosive and erratic behavior. Although respondent refused to take several drug screens, one that she voluntarily submitted was positive for methamphetamine.

While its investigation was ongoing, CPS recommended that respondent participates in preventative services. Respondent was offered random drug screens, a family skills program, and case management services. CPS also referred respondent to substance abuse treatment and counseling, but respondent failed to follow through with the referrals. Consequently, in August 2021, petitioner, the Department of Health and Human Services ("DHHS"), filed a petition requesting that the court take jurisdiction and formally remove the child from respondent's care and place her into protective custody. Respondent entered a plea of admission to the allegations in the petition in September 2021, and the court took jurisdiction over the child.

At the initial dispositional hearing that immediately followed, the court ordered respondent to comply with a case service plan designed to improve her parenting skills, address her mental health and substance abuse issues, and ensure that the child would have a safe and stable home environment. Approximately eight months into the treatment plan, more than 182 days later, DHHS filed a supplemental petition for permanent custody alleging that respondent failed to participate in and benefit from the treatment plan.

Evidence was presented at the termination hearing that, throughout the approximate year the child had been removed from the home, respondent did not meaningfully participate in and benefit from her treatment plan. Consequently, she did not demonstrate that she could properly parent the child or that the child would be safe in respondent's care. The evidence also established that there was no reasonable likelihood that respondent would be in a position to safely parent the child within a reasonable time.

After the court took jurisdiction of the child, respondent was ordered to comply with several services, including random drug screens, a substance abuse assessment, substance abuse

-2-

treatment, parenting education, a psychological evaluation, and individual therapy. She was also ordered to attend parenting time, stay in communication with the caseworker, and obtain and maintain suitable housing and a legal source of income. Concomitant with respondent's obligations, DHHS was required to make the necessary service referrals and assist respondent in her reunification goal. Of particular note, respondent was provided hands-on assistance through a supportive visitation coach. She also received guidance from a Family Assistance Program worker who was present to assist respondent with any of her needs, including housing conditions, managing schedules, and obtaining employment. The evidence demonstrated that despite DHHS's efforts, the circumstances that precipitated the child's removal continued to exist at the time of termination. Respondent was in no better position to parent her child than when the child was made a temporary ward of the court.

The record clearly demonstrates that respondent was unable to overcome the most significant barriers to reunification, namely, her substance abuse issues and, likely related, her mental health issues. Respondent did not submit to any of the court-ordered weekly random drug screens. As a consequence, she missed more than 78 screens. When she appeared to be under the influence of some substance at parenting time, the caseworker requested, on 16 occasions, that respondent submit to a drug test. Respondent refused 11 of these requested screens. On the five occasions that she agreed to screen, three were positive for THC, one was positive for methamphetamine, and one was negative. Respondent told the caseworker that she did not comply with the drug screening because she was afraid she would test positive. Respondent also revealed that she did not attend an interview for possible employment because she knew that she would not pass the mandatory drug test.

Clear and convincing evidence demonstrated that respondent continued to abuse substances while the children were temporary wards of the court, and she made no meaningful effort to address her substance abuse issues. Respondent knew that she was required to participate in a substance abuse assessment and a psychological evaluation in order to participate in substance abuse counseling and mental health treatment. Despite multiple referrals beginning in September 2021, respondent delayed seven months before completing the assessments. When she did submit to the assessments in April 2022, she was not candid with the clinicians about the extent of her substance abuse. Consequently, at the time of the June 2022 termination hearing, respondent had not participated in any counseling. Considering respondent's lack of compliance with services, and evidence that respondent continued to use controlled substances, there was overwhelming evidence that respondent had not addressed or overcome her substance abuse issues.

The child also came into care, in part, because her physical and educational needs were not being met. There was evidence that the child was not properly fed, was drinking out of the toilet in the home, and missed a substantial amount of school. The treatment plan included services designed to improve respondent's parenting skills. In lieu of parenting classes, respondent was offered supportive visitation, which was designed to give respondent more hands-on assistance during parenting time. On appeal, respondent focuses heavily on the testimony that she benefited from this service to some extent. There was testimony that respondent occasionally implemented some of the tools and techniques she discussed with the parenting coach. However, while respondent may have benefited some, there was clear and convincing evidence that she still could not properly and safely parent her child.

There was also testimony that respondent often arrived at parenting time under the influence of substances. She also missed more than 30 percent of her scheduled parenting-time visits, and three missed visits occurred only a few months before the termination hearing. Although respondent occasionally brought food and activities, there was also testimony that she was withdrawn and unengaged during some visits. On these days, respondent had difficulty managing the child's behaviors. At one visit, respondent could not control the child's and her sibling's unruly behavior even after intervention and redirection by the caseworker. The visit became so chaotic that the caseworker terminated parenting time early for the children's safety. At another visit, only a few weeks before the termination hearing, even after being cautioned by the caseworker, respondent discussed her eviction with the child and expressed her belief that she would never get the child back. This evidence supports that despite there being some evidence that respondent benefited from instruction by the parenting coach, there was clear and convincing evidence that respondent's parenting skills had not improved enough to ensure that the child would be safe in her care.

The treatment plan also required respondent to obtain and maintain suitable housing and a legal source of income. However, respondent did not comply with these components of her treatment plan. When the child was removed in the early summer of 2021, respondent had housing, but it was unsuitable for her child. The home was in disarray and littered with trash, clothing, and old food. The caseworker attempted to assess the suitability of the home several times, but respondent would not permit the worker access. Respondent repeatedly indicated that it "was not ready" for assessment. The caseworker and the supportive visitation coach offered to provide respondent with a service provider to help clean the home, but respondent refused this assistance. Then, respondent was evicted from her trailer park for failing to pay rent and after the landlord received complaints of inappropriate activity at the premises. At the time of termination, respondent was staying with a friend rent-free in exchange for providing babysitting services. Accordingly, there was clear and convincing evidence that, at the time of termination, respondent still did not have stable and suitable housing for her child.

Regarding a legal source of income, respondent claimed to be self-employed, selling Pure Romance products, but she never provided the caseworker with verification of employment. In any event, respondent testified that she earned less than $500 a month with this venture. Respondent also admitted that she did not follow through with a possible employment opportunity because she knew that she would not pass the mandatory drug testing, and additional testimony indicated that she could have returned to a job she held for nine years but elected not to do so because she was unwilling to put in the long hours the employer required. Respondent's admissions supported the trial court's finding that respondent was capable of financially supporting her family, but she was unwilling to make the lifestyle changes necessary to do so.

The foregoing evidence clearly and convincingly demonstrated that at the time of termination, the conditions that led to the adjudication continued to exist. Further, the record clearly established that there was no reasonable likelihood that respondent would be in a position to safely parent her child within a reasonable time. CPS offered respondent preventative services before filing the petition. After the petition was filed, the court ordered respondent to comply with a treatment plan. Respondent had more than a year to make meaningful changes in her life, but she did not take advantage of any of the opportunities provided to her. Respondent failed to adequately address the barriers to reunification. She simply refused to participate in and benefit

from the treatment plan. Indeed, respondent represented to the caseworker that she could stop using drugs anytime she wanted and testified at the termination hearing that she did not have a drug problem. There was additional testimony that respondent minimized her drug use. Clearly, respondent had gained no insight into the issues that separated her from her child. Further, because she was unwilling or unable to make meaningful changes, clear and convincing evidence supports the trial court's conclusion that the conditions that led to the adjudication would not be rectified within a reasonable time.

Termination of parental rights under § 19b(3)(c)(*i*) is warranted when "the totality of the evidence amply supports" a finding that the parent has not achieved "any meaningful change" in the conditions that led to the trial court assuming jurisdiction of the child. *In re Williams*, 286 Mich App 253, 272; 779 NW2d 286 (2009). DHHS met this evidentiary burden by clear and convincing evidence. Further, the record supports the trial court's finding that there was no reasonable likelihood that respondent would be in a position to safely parent her child within a reasonable time. Accordingly, the trial court did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under § 19b(3)(c)(*i*).

Considering the same evidentiary record, the court also did not clearly err when it found clear and convincing evidence to terminate respondent's parental rights under §§ 19(3)(g) and (j). "A parent's failure to participate in and benefit from a service plan is evidence that the parent will not be able to provide a child proper care and custody." *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014). "Similarly, a parent's failure to comply with the terms and conditions of his or her service plan is evidence that the child will be harmed if returned to the parent's home." *Id*. at 711.

## II. BEST INTERESTS

Respondent also challenges the trial court's finding that termination of her parental rights was in the child's best interests.

"If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). The court may consider several factors when deciding if termination of parental rights is in a child's best interests, including the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). The court may also consider psychological evaluations, the child's age, continued involvement in domestic violence, and a parent's history. *In re Jones*, 286 Mich App 126, 131; 777 NW2d 728 (2009). "The trial court should weigh all the evidence available to determine the children's best interests." *In re White*, 303 Mich App at 713. Further, the trial court's focus must be on the child and not the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Whether termination of parental rights is in a child's best interests must be proven by a preponderance of the evidence. *Id*. at 90. This Court reviews for clear error a trial court's finding that termination of parental rights is in a child's best interests. *In re Jones*, 286 Mich App at 129.

The child was seven years old at the time of termination. She was doing well in the care of her maternal grandfather, she was comfortable in this placement, and a bond existed. The child did not have any special needs and she was developing appropriately. The maternal grandfather had expressed an interest in adopting the child should respondent's parental rights by terminated.

By contrast, respondent had not participated in or benefited from the treatment plan. Her inconsistent attendance at parenting time and failure to adequately address her substance abuse and mental health issues demonstrated that she was unwilling to put her child's needs ahead of her own. More importantly, respondent's continued drug use and refusal to acknowledge that she had a substance abuse problem, coupled with her erratic behavior, indicated that the child would be at risk of harm in respondent's care. Respondent simply was unable to parent her child, whereas the maternal grandfather had demonstrated that he could properly and safely provide for the child in his care. When balancing the best-interest factors, a court may consider the advantages of a foster home over the parent's home and the possibility of adoption. *In re Olive/Metts*, 297 Mich App at 41-42.

Respondent argues that the existence of a bond between her and the child was a factor that weighed against termination of her parental rights. While respondent and the child may have a bond, the trial court found that any bond did not outweigh the child's need for a safe and stable home that was free from substance abuse. Given the child's young age, the trial court's conclusion that her best interests were served by being placed with someone who could provide adequate care and supervision, was not clearly erroneous.

Finally, the trial court acknowledged that the child's placement with the maternal grandfather would favor reunification, but it went on to properly balance relative placement with other relevant factors. The court noted the child's young age and her need for permanency, stability, and finality. It also considered the risk to the child in respondent's care. Ultimately, the court concluded that termination of parental rights was in the child's best interests. Even though placement with a relative weighs against termination, and such a placement must be considered, a trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests. *Id*. at 43. Here, the trial court properly balanced the relevant factors and did not clearly err by finding that termination of respondent's parental rights was in the child's best interests, despite her placement with a relative.

Affirmed.

/s/ Kirsten Frank Kelly
/s/ Christopher M. Murray
/s/ Brock A. Swartzle